IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ASIATIC ROYALPRINCE ALLAH,   )<br>    Plaintiff,                            )<br>                                        )<br>v.                                       )<br>                                        )<br>MARK ENGELKE, et al.,            )<br>    Defendants.                    )  | Case No. 7:20-cv-00755<br><br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

Vernon L. Brooks, Jr., a/k/a Asiatic Royalprince Allah ("Allah"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that prison officials violated his rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, by refusing to accommodate his religious dietary needs. Defendants Mark Engelke, Marie Vargo, and S. Fuller have filed a motion to dismiss to which Allah has responded. ECF Nos. 15 and 20. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

                                **I.     Factual Background**

The following summary of the facts is taken from the complaint and its accompanying exhibits. The facts are presented in the light most favorable to Allah. See McCaffey v. Chapman, 921 F.3d 159, 163–64 (4th Cir. 2019) ("In considering a motion to dismiss under Rule 12(b)(6), a court 'accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . .'") (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)).

Allah is in the custody of the Virginia Department of Corrections ("VDOC"). Compl., ECF No. 1, at 2. At the time the action was filed, he was incarcerated at Red Onion State Prison ("Red Onion"), where Fuller is the Assistant Warden. Id. at 2–3. Engelke is the VDOC's Director of Food Services, and Vargo is identified as the "Corrections Operations Administrator Legislative Liaison." Id. at 3.

Since 2004, Allah has been a member of the Nation of Gods and Earths ("NGE"), a religious group whose adherents are also known as "Five Percenters." Id. at 4. Allah alleges that NGE members observe dietary restrictions similar to those followed by "Jews and Orthodox Sunni Muslims," such as "refraining from eating pork or pork byproducts" and "scavenger animals such as crabs and catfish." Id. A kosher or halal diet generally conforms with the dietary strictures of the NGE. Id.

The VDOC offers a Common Fare diet for offenders whose religious dietary needs cannot be met by the regular menu. Id. According to Allah, however, the Common Fare diet is "no longer ritually fit (kosher) for the use of his religious or cultural beliefs" because of changes made to the menu. Id. He alleges that the Common Fare menu "has become so bastardized and adulterated that it do[es] not meet Orthodox Jewish dietary laws and standards as it once did." Id.

On October 10, 2019, Allah submitted a request to be placed on the Orthodox Jewish diet offered by the VDOC. Id. at 5. Allah alleges that the Orthodox Jewish diet is "ritually fit for use according to [his] sincerely held religious or cultural beliefs" because it complies with restrictions relevant to the slaughtering and preparation of meat, the manufacturing and processing of dietary products, and the cooking and service of food. Id. Allah included this

2

information in his request to be placed on the Orthodox Jewish diet. Compl. Ex. A, ECF No. 1-1 at 2.

Allah's request was initially denied by Engelke. Id. In an undated memorandum, Engelke advised Allah that he "does not meet the standard to be on the diet" and that Engelke had determined that "the Common Fare diet will meet [his] requirements." Compl. Ex. B, ECF No. 1-1 at 5.

Allah filed a grievance appealing Engelke's decision. Compl. Ex. C, ECF No. 1-1 at 7. Fuller denied the appeal on February 6, 2020, Compl. Ex. D, ECF No. 1-1 at 10, and Vargo subsequently upheld Fuller's decision, Compl. Ex. E, ECF No. 1-1 at 12. Vargo noted that Fuller, the Level I respondent, had "determined that [the] Common Fare Meal does meet the dietary needs for offenders whose religious dietary [requirements] cannot be met by the Master Meals" and that "[f]urther investigation" had revealed that "Common Fare/Kosher produces are stored, prepared, and served separately from non-kosher produces except fresh vegetables and fruits." Compl. Ex. E.

## II. Procedural History

On December 21, 2020, Allah filed this action against Engelke, Fuller, and Vargo in their individual and official capacities. He alleges violations of his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. He seeks injunctive relief, compensatory damages, and punitive damages.

On April 19, 2021, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Allah has responded to the motion, and it is ripe for disposition.

### III.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### IV.     Discussion

Allah has filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was

4

committed under color of state law." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks and citation omitted).

The defendants offer multiple arguments in support of their motion to dismiss. The court will address each argument in turn.

### A. Claims for Damages

The defendants first move to dismiss certain claims for damages. The defendants correctly note that a plaintiff may not recover damages against state officials sued in their official capacities under § 1983. Such claims are considered claims against the state, and the state is entitled to Eleventh Amendment immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Thus, state officials acting in their official capacities are not considered "persons" under § 1983, and the Eleventh Amendment precludes any official-capacity claims for damages. Will, 491 U.S. at 71; Cromer, 88 F.3d at 1332.

Similarly, with respect to Allah's claim under RLUIPA, the Eleventh Amendment bars claims for damages against officials who are sued in their official capacities. Rendelman v. Rouse, 569 F.3d 182, 187 (4th Cir. 2009) (citing Madison v. Virginia, 474 F.3d 118 (4th Cir. 2006)). Additionally, "RLUIPA does not authorize a claim for money damages against an official sued in her individual capacity." Id. at 184. Instead, a plaintiff "can only obtain equitable relief" for a RLUIPA violation. Burke v. Clarke, 842 F. App'x 828, 836 (4th Cir. 2021).

For these reasons, all official-capacity claims for damages are subject to dismissal, as are any claims for damages against the defendants in their individual capacities under RLUIPA.

5

### B. Equal Protection Claim

The defendants next argue that Allah's complaint fails to state an equal protection violation based on the denial of his request for the Orthodox Jewish diet. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

The court agrees with the defendants that the factual allegations in Allah's complaint are insufficient to state an equal protection claim. Allah does not plausibly allege that he was treated differently from others who are similarly situated as the result of "intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). None of Allah's allegations suggest that the defendants denied his religious dietary request on the basis of his affiliation with the NGE or any other discriminatory basis. See Burke, 842 F. App'x at 838 (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that the VDOC applied a policy with discriminatory intent against Rastafarians); see also C & H Co. v. Richardson, 78 F. App'x 894, 902 (4th Cir. 2003) (emphasizing that "a plaintiff alleging an Equal Protection violation actionable under §1983 must establish that the differential treatment [he] was afforded was intentional, not the result of mere negligence"). Thus, the complaint fails to state an equal protection claim against any of the defendants.

6

C. **Claims under the First Amendment and RLUIPA**

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018). "[A] substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (second alteration in original) (internal quotation marks and citation omitted). In assessing whether a prison's practice or policy is substantially burdensome, "courts must not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." Holt v. Hobbs, 574 U.S. 352, 356 (2015). For purposes of RLUIPA, "[t]he term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005).

In moving to dismiss Allah's claims under the First Amendment and RLUIPA, the defendants argue that he has not plausibly alleged that the refusal to place him on the

7

Orthodox Jewish diet has substantially burdened his ability to practice his religion. See Defs.' Mem. Supp. Mot. Dismiss, ECF No. 16, at 9. Upon review of the complaint, however, the court disagrees. Allah plainly alleges that he adheres to a kosher or halal diet as a member of the NGE; that the Common Fare diet offered by the VDOC no longer complies with his religious dietary restrictions as a result of changes made to the diet; that the Orthodox Jewish diet does comport with his religious dietary restrictions; and that he has been denied the opportunity to be placed on the Orthodox Jewish diet. Allah's allegations, accepted as true and viewed in the light most favorable to him, allow the court to reasonably infer that the refusal to place him on the Orthodox Jewish diet has substantially burdened his ability to practice his religion. See Carter, 879 F.3d at 139 (concluding that the plaintiff's verified complaint, which alleged that the new Common Fare menu includes items that violate the dietary rules of the Nation of Islam, "created a genuine factual dispute as to whether Defendants' actions in preventing him from receiving meals that comply with his dietary restrictions substantially burdened his ability to practice his religion"); Jones v. Carter, 915 F.3d 1147, 1150, 1152 (7th Cir. 2019) (affirming an order requiring the Indiana Department of Corrections to serve a Muslim inmate meals that contain kosher or halal meat and explaining that "[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice"). Consequently, the motion to dismiss is denied as to the defendants' first argument.

The defendants also argue that Allah's allegations are insufficient to establish that Fuller and Vargo were personally involved in the alleged violations of his religious rights. The defendants note that "Fuller and Vargo are not alleged to have made the initial decision" to

8

deny Allah's request for placement on the Orthodox Jewish diet and that they merely "up[held], in the context of a grievance appeal, the decision that had been made by Defendant Engelke." Def.'s Mem. Supp. Mot. Dismiss at 5–6. The defendants cite cases indicating that a prison official's act of responding to a grievance generally does not cause or contribute to a constitutional violation. Id. at 6 (citing, among others, George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.") (internal citations omitted)).

The general principle on which the defendants rely is particularly applicable when an inmate files suit against a prison official who responded to a grievance complaining of past or completed misconduct. See George, 507 F.3d at 609–610 ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (holding that that the warden was "not sufficiently personally involved in the hearing process to be liable under § 1983 for any procedural defects" merely because he received a letter complaining about the denial of due process at the hearing). When a grievance alleges a continuing violation of an inmate's rights, however, a prison official who reviews the grievance can be deemed to have been personally involved in the deprivation. See Wright, 766 F.2d at 850 (concluding that summary judgment was not appropriate on the question of the warden's liability for conditions in the segregation unit since the inmate complained of a continuing problem which may have been within the warden's power to remedy); Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (noting that "[w]here a

9

grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly").

Here, Allah's grievance and the attached letter alerted Fuller and Vargo to an ongoing problem—namely, that the Common Fare diet no longer complies with Allah's religious dietary restrictions and that he needs to be placed on the Orthodox Jewish diet in order to adhere to his sincerely-held religious beliefs. Vargo's response to Allah's grievance appeal suggests that she and Fuller investigated Allah's allegations regarding the Common Fare diet and his request to be placed on the Orthodox Jewish diet, and determined that he could receive or remain on the Common Fare diet. At this stage of the proceedings, the court concludes that Allah has plausibly alleged that Fuller and Vargo "had knowledge of an alleged ongoing violation of [the plaintiff's] religious rights and the authority to grant [the plaintiff] the diet he requested, but refused to do so." Griffin v. Engelke, No. 7:20-cv-00195, 2020 WL 6047431, at *4 (W.D. Va. Oct. 13, 2020). Such allegations are sufficient to survive a motion to dismiss. Id.

### IV. Conclusion

For these reasons, the defendant's motion to dismiss, ECF No. 14, is **GRANTED IN PART AND DENIED IN PART**. The court **DISMISSES** all official-capacity claims for damages against the defendants, any claim for damages against the defendants in their individual capacities under RLUIPA, and the equal protection claim. The case will proceed on the plaintiff's claims for equitable relief for alleged violations of the First Amendment and

RLUIPA, and the plaintiff's First Amendment claim for damages against the defendants in their individual capacities. An appropriate order will be entered.

Entered: January 27, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.01.27 12:26:11
-05'00'

Michael F. Urbanski
Chief United States District Judge

11