IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ASIATIC ROYALPRINCE ALLAH, ) | |
|     Plaintiff, ) | Case No. 7:20-cv-00755 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| MARK ENGELKE, et al., ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Vernon L. Brooks, Jr., a/k/a Asiatic RoyalPrince Allah ("Allah"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that prison officials violated his federal constitutional and statutory rights by denying his request to receive an Orthodox Jewish diet. Defendants Mark Engelke, Marie Vargo, and S. Fuller have filed a motion for summary judgment on the remaining claims to which Allah has responded. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## Background

Allah is in the custody of the Virginia Department of Corrections ("VDOC"). Compl., ECF No. 1, at ¶ 3. At the time the action was filed, he was incarcerated at Red Onion State Prison ("Red Onion"), where Fuller was the Assistant Warden. Id. ¶¶ 3, 6; see also Answer, ECF No. 24, at ¶ 5. Engelke is the VDOC's Director of Food Services, and Vargo is a former corrections administrator for the VDOC. Answer ¶¶ 3–4. Vargo left that position in June 2019, and she is now the Chief Executive Officer of Virginia Correctional Enterprises. Vargo Aff., ECF No. 32-5, at ¶ 1; Answer ¶ 4.

Allah alleges that he "has been a sincere adherent of the Nation of Gods and Earth (NGE), also known as the Five Percenters, since 2004," and that NGE members "adhere to a kosher-halal diet." Compl. ¶ 8. According to Allah, NGE members observe dietary restrictions similar to those followed by "Jews and Orthodox Sunni Muslims," such as "refraining from eating pork or pork byproducts" and "scavenger animals such as crabs and catfish." Id. ¶ 9. Consequently, "[a] kosher, halal, or vegan diet generally conforms" to their dietary restrictions. Id.

For years, the VDOC has offered a religious diet program designed to meet the basic nutritional needs of inmates whose religious dietary needs cannot be met by the VDOC's Master Menu. Engelke Aff., ECF No. 39, at ¶ 4. The program is known as the Common Fare diet. Id. All foods purchased for the Common Fare diet, except fresh fruits and vegetables, must be "certified by a recognized Orthodox Standard, such as 'U,' 'K,' or 'CRC.'" Id. ¶ 5. The meals include no pork or pork derivatives, and all Common Fare foods are stored separately from items for other menus. Id. The Common Fare meals are prepared in a designated Common Fare area, and "[a]ll Common Fare pans, lids, utensils, and equipment are labeled for Common Fare and are not used for any other purpose." Id. The Common Fare diet "was designed to comply with both Jewish and Muslim dietary laws." Id.

As a result of litigation by an Orthodox Jewish inmate, the VDOC began offering a separate Orthodox Jewish diet.[1] Id. ¶ 6; see also Defs.' Br. Supp. Mot. Summ. J., ECF No. 32, at ¶ 14 n.3 (citing Estes v. Clarke, No. 7:15-cv-00155 (W.D. Va.)). The Orthodox Jewish diet

---

[1] As of October 1, 2021, the Orthodox Jewish diet is officially called the Sealed Religious diet. Engelke Aff. ¶ 6; see also VDOC Food Service Manual Chapter 4, amended Oct. 1, 2021, ECF No. 32-2. For purposes of this opinion, the court will continue to refer to the diet as the Orthodox Jewish diet.

2

was created specifically "for inmates whose religious beliefs require the active supervision of an Orthodox Rabbi during food preparation in order to designate that meal as Kashrut." Engelke Aff. ¶ 6. The prepackaged meals are prepared in the presence of an Orthodox Rabbi at the Kosher Kitchen at the Southampton Agri-Business Center. Id.

According to the defendants' evidence, the Common Fare diet and the Orthodox Jewish diet "are very similar in that both diets are Kosher." ¶ 7. "The meals for both diets may be cooked in the same ovens and served on the same trays," and "[t]he composition of the meals is very similar, and in some cases, the same." Id. "The only meaningful difference between the composition of the two diets is that the Orthodox Jewish diet is prepared in the presence of a Rabbi, while [the] Common Fare is not." Id.

On October 10, 2019, Allah submitted a written request to be placed on the Orthodox Jewish diet. Compl. ¶ 13. At the time of his request, Allah was not on any special diet. Engelke Aff. ¶ 10. In support of his request, Allah asserted that it was his "firmly held religious belief that because of the changes made to the [Common Fare] diet that it's no longer ritually fit (kosher) for the use of [his] religious practice and beliefs." Compl. Ex. A, ECF No. 1-1, at 2.[2] Allah also expressed the belief that the Orthodox Jewish diet would be "ritually fit for use according to [his] sincerely held religious beliefs." Id.

Engelke denied Allah's request to be placed on the Orthodox Jewish diet. Compl. Ex. B, ECF No. 1-1, at 5. In an undated memorandum, Engelke advised Allah that the request did "not meet the standard to be on the [Orthodox Jewish] diet." Id. Based on the information

---

[2] Page citations to the exhibits docketed at ECF No. 1-1 refer to the pagination generated by the court's CM/ECF system.

3

submitted by Allah, Engelke determined that the Common Fare diet would meet Allah's dietary requirements. Id. "That is, because the Common Fare diet was and is Kosher in composition and preparation, and because Allah did not identify any specific NGE religious dietary requirement not already accommodated by the Common Fare, [Engelke] determined that he had not identified a specific religious need for an Orthodox Jewish meal." Engelke Aff. ¶ 11.

Allah filed a grievance appealing Engelke's decision. Comp. Ex. C, ECF No. 1-1, at 7. Allah indicated that he "would like to be placed on the Orthodox Jewish diet based on [his] sincerely held religious belief as a member of the Nation of Gods and Earth." Id. On February 5, 2020, the grievance was deemed unfounded by Fuller. Compl. Ex. D, ECF No. 1-1, at 10. On March 3, 2020, a VDOC administrator upheld Fuller's decision. Compl. Ex. E, ECF No. 1-1, at 12.

## Procedural History

On December 21, 2020, Allah filed this action against Engelke, Fuller, and Vargo, claiming that the defendants violated his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000c-5, by denying his request to receive the Orthodox Jewish diet. In his complaint, Allah alleged that he and other members of the NGE adhere to a kosher or halal diet, and he expressed the belief that the Common Fare diet is "no longer ritually fit (kosher) for the use of his religious or cultural practice and beliefs." Compl. ¶¶ 8, 10. He alleged, "[u]pon information and belief," that "the [Common Fare] meals [have] become so bastardized and adulterated that [they] do

4

not meet Orthodox Jewish dietary laws and standards . . . ." Id. ¶ 11. He further alleged, "[u]pon information and belief," that the Orthodox Jewish diet is "ritually fit for use according to [his] sincerely held religious or cultural beliefs." Id. ¶ 12. The complaint was signed and stamped by a notary public, and it included a handwritten statement indicating that it was "subscribed and sworn before [the notary public]" on December 15, 2020. Id. at 12.

After being served with process, the defendants moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). On January 27, 2022, the court issued an opinion and order granting in part and denying in part the defendants' motion. The order provided that the case would proceed solely on the plaintiff's claims for equitable relief for alleged violations of the First Amendment and RLUIPA, and the plaintiff's First Amendment claim for damages against the defendants in their individual capacities. See Order, ECF No. 23.

After the defendants filed an answer to the remaining claims, Allah engaged in written discovery. On February 28, 2022, he filed a request for production of documents and requests for admission. See ECF Nos. 25 and 27. On March 28, 2022, the defendants filed a copy of the cover letter accompanying their responses to Allah's discovery requests. ECF No. 28. The letter advised Allah to contact defense counsel if he had any questions or concerns regarding the enclosed documents Id. Allah did not file a response to the letter or otherwise seek to compel the defendants to produce additional discovery.

On June 6, 2022, the defendants filed a motion for summary judgment on the remaining claims, along with affidavits and other exhibits. ECF No. 31. In their supporting memorandum, the defendants argue that Vargo played no role in the alleged violations of the

5

First Amendment and RLUIPA, that Allah's claims lack merit, and that they are entitled to qualified immunity. ECF No. 32.

On June 7, 2022, the Clerk issued a Roseboro[3] notice that gave Allah twenty-one days "to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding [the defendants'] evidence." ECF No. 33. Allah subsequently filed a motion for extension of time to respond to the defendants' motion. ECF No. 34. That motion was granted on June 24, 2022, and Allah mailed a timely response to the motion on July 29, 2022, along with several attachments. ECF Nos. 35 and 36. One of the attachments appears to be a copy of the complaint to which Allah added a page "verify[ing]" that the facts set forth in the complaint "are true to the best of [his] knowledge and belief" and that "any facts stated on information and belief are true to the best of [his] knowledge and belief." See ECF No. 36-1 at 13. Based on the allegations in the complaint, Allah argues that summary judgment is inappropriate. See ECF No. 36 at 2–13.[4]

---

[3] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

[4] At the conclusion of the response, Allah summarily asserts that "the defendants refused [to give him a meaningful] chance at respectfully requesting discovery that would have helped [him] better present evidence in his favor . . . ." Pl.'s Resp. at 13. However, this assertion is belied by the record. As indicated above, the record reflects that Allah propounded written discovery requests and that the defendants responded to those requests. Allah did not challenge any of the defendants' responses or otherwise seek to compel the defendants to provide additional discovery. Moreover, Allah had nearly four months to engage in discovery before the defendants filed their motion for summary judgment. Therefore, he was not denied a meaningful opportunity to conduct discovery. See, e.g., Carter v. HSBC Mortg. Servs., Inc., 680 F. App'x 890, 892 (11th Cir. 2017) (holding that a pro se plaintiff was not denied a meaningful opportunity to conduct discovery where the plaintiff had at least one month to engage in discovery before the defendant filed its motion for summary judgment and the plaintiff submitted no discovery requests regarding a particular factual issue). Additionally, Allah's vague and conclusory assertions in this regard are insufficient to support a request for relief under Federal Rule of Civil Procedure 56(d). See Fed. R. Civ. P. 56(d) (permitting a court to deny or defer considering a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"); see also Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (noting that the plaintiff's "vague assertions" regarding the need for further discovery were not an adequate substitute for a Rule 56(d) affidavit).

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobb, Inc., 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the [nonmovant].'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (alteration in original) (quoting Anderson, 477 U.S. at 252). "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1993). "However, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations therein are based on personal knowledge." Id. (emphasis in

original). On the other hand, "a verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment." Walker v. Tyler Cnty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001); see also Burwick v. Pilkerton, 700 F. App'x 214, 216 (4th Cir. 2017) ("The 'personal knowledge requirement prevents statements in affidavits that are based, in part, upon information and belief—instead of only knowledge— from raising genuine issues of fact sufficient to defeat summary judgment.'") (quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).

## Discussion

### I. Personal Involvement in the Alleged Violations

Allah filed suit against the defendants under 42 U.S.C. § 1983 and RLUIPA. To establish personal liability under these statutes, the plaintiff must prove that the defendant acted personally in the deprivation of the plaintiff's rights. See Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (addressing personal liability under § 1983); see also Yaacov v. Mohr, No. 22-3294, 2022 U.S. App. LEXIS 27060, at *4 (6th Cir. Sept. 27, 2022) ("[T]o establish a defendant's liability under § 1983 and RLUIPA, a plaintiff must establish personal involvement."). That is, the defendant's "own individual actions" must have violated federal law. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Based on the evidence presented, the court concludes that no reasonable finder of fact could find that Vargo was personally involved in the alleged violations of Allah's constitutional and statutory rights. Although Allah alleged in his complaint that Vargo "upheld the decision to deny [him] the Orthodox Jewish diet," Compl. ¶ 18 (citing the March 3, 2020, Level II grievance response attached the complaint as Ex. E), the signature on the Level II response is

completely illegible. See Compl. Ex. E, ECF No. 1-1, at 12. Moreover, Vargo has submitted an affidavit averring that she left her position as a corrections administrator in June 2019, approximately nine months earlier, and therefore "had no involvement whatsoever in this grievance appeal." Vargo Aff. ¶ 6.

In response to the defendants' motion, Allah does not cite to any specific evidence contradicting Vargo's affidavit. Instead, he simply repeats the allegation in the complaint that Vargo "upheld the decision to deny the plaintiff the Orthodox Jewish diet." Pl.'s Resp., ECF No. 36, at 8 (citing Compl. ¶ 18). Because this conclusory allegation is not supported by any evidence, the court concludes that it is insufficient to create a genuine dispute as to whether Vargo was personally involved in the alleged violations of Allah's constitutional and statutory rights. See Reddy v. Buttar, 38 F.4th 393, 403 (4th Cir. 2022) (explaining that in order to establish a genuine dispute as to a material fact, "the party opposing the motion [for summary judgment] must rely on more than conclusory allegations") (internal quotation marks and citation omitted); Sabbats v. Clarke, No. 7:21-cv-00198, 2022 U.S. Dist. LEXIS 164430, at *13 (W.D. Va. Sept. 12, 2022) (noting that when "a pro se plaintiff fails to respond to a defendant's specific evidence contradicting the conclusory allegations of her complaint or submissions, . . . that defendant may be entitled to summary judgment"). Accordingly, to the extent Allah seeks to hold Vargo personally liable for the alleged violations, Vargo is entitled to summary judgment.

## II. Merits of the First Amendment and RLUIPA Claims

The defendants also argue that they are entitled to summary judgment on the merits of Allah's claims under the First Amendment and RLUIPA. The Free Exercise Clause of the

First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). In order to prevail on a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must establish: (1) that he holds a sincere religious belief, and (2) that a prison practice or policy places a substantial burden on his ability to practice his religion. Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017).

Similarly, RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." Holt v. Hobbs, 574 U.S. 352, 356 (2015). Thus, to prevail under RLUIPA, an inmate must first establish that "prison officials imposed a substantial burden on [his] religious exercise." Wright v. Lassiter, 921 F.3d 413, 418 (4th Cir. 2019) (emphasis omitted); see also id. (noting that the first showing that must be made for claims under RLUIPA and the First Amendment "is essentially the same for both claims").

For purposes of RLUIPA and the First Amendment, "a substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (alterations in original) (internal quotation marks and citations omitted). In other words, "a substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." Dorman

v. Chaplains Office BSO, 36 F.4th 1306, 1314 (11th Cir. 2022) (internal quotation marks and citation omitted); see also Livingston Christian Schs. v. Genoa Charter Twp., 858 F.3d 996, 1003 (6th Cir. 2017) (emphasizing that "a burden must have some degree of severity to be considered 'substantial'").

Upon review of the record, the court concludes that Allah has not produced sufficient evidence to support a finding that the denial of his request for the Orthodox Jewish diet inflicted a substantial burden on his ability to practice his NGE religious beliefs. Allah alleges that his religion requires him to adhere to a kosher or halal diet, and the defendants have presented evidence indicating that the Common Fare diet meets kosher dietary restrictions. The defendants have also presented evidence indicating that the only meaningful difference between the Common Fare diet and the Orthodox Jewish diet is that the latter is prepared in the presence of an Orthodox Jewish Rabbi in order to accommodate "inmates whose religious beliefs require the active supervision of an Orthodox Rabbi during food preparation in order to designate that meal as Kashrut." Engelke Aff. ¶ 11. Unlike those inmates, Allah has not alleged that he requires a diet that is prepared under the direct supervision of an Orthodox Jewish Rabbi. Nor has he identified any other religious dietary requirements that are not already accommodated by the Common Fare diet. See, e.g., Carter v. Fleming, 879 F.3d 132, 140–41 & n.8 (4th Cir. 2018) (concluding that a genuine factual dispute existed as to whether the defendants' actions substantially burdened his ability to practice his religion where the inmate specifically asserted that the inclusion of fried foods on the Common Fare menu prevented him from complying with Nation of Islam dietary restrictions and he submitted evidence to support the assertion).

11

In response to the defendants' motion, Allah cites to the portion of the complaint in which he summarily asserts that the Common Fare diet is "no longer ritually fit (kosher) for the use of his religious or cultural practice and beliefs" as a result of "changes" to the diet. Pl.'s Resp. at 6 (citing Compl. ¶ 10).[5] Importantly, however, Allah does not identify any particular changes, much less explain how those changes would impact his ability to practice his beliefs as an NGE adherent. Consequently, the assertions on which Allah relies, which are conclusory and without factual support, are insufficient to withstand summary judgment. See Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) (holding that the district court did not err in concluding that an inmate failed to produce enough evidence to support a finding that the denial of requested sacred items inflicted a substantial burden on his ability to practice his religion where the inmate "alleged in his amended complaint that the sacred items were 'necessary' to perform 'well-established rituals'" but "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs").

In sum, the allegations on which Allah relies are insufficient to create a genuine issue of material fact as to whether the denial of his request for the Orthodox Jewish diet inflicted a substantial burden on his ability to practice his NGE religious beliefs. Because Allah has not presented enough evidence to establish this threshold element, the defendants are entitled

---

[5] Allah also cites to the paragraph of the complaint in which he alleges, "[u]pon information and belief," that the Common Fare meals have become "so bastardized and adulterated" that they no longer satisfy Orthodox Jewish dietary laws. Pl.'s Resp. at 6 (citing Compl. ¶ 11). In addition to being wholly conclusory, there is no indication that this allegation is based on personal knowledge. Consequently, it cannot be considered on summary judgment. See Walker, 11 F. App'x at 274 (explaining that "a verified complaint that alleges facts that are made on belief or information and belief is insufficient to oppose summary judgment").

to summary judgment on the merits of his claims for alleged violations of the Free Exercise Clause of the First Amendment and RLUIPA.[6]

## Conclusion

For these reasons, the court concludes that there is no genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law on the remaining claims. Accordingly, the defendants' motion for summary judgment, ECF No. 31, is **GRANTED**.

An appropriate order will be entered.

Entered: February 22, 2023

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.02.22 17:32:32 -05'00'

Michael F. Urbanski
Chief United States District Judge

---

[6] In light of this decision, the court need not address the defendants' alternative argument that they are entitled to qualified immunity with respect to any claim for damages for an alleged violation of Allah's rights under the First Amendment.